UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH M. WILSON,

        Plaintiff,

      v.

STEUBEN COUNTY, NEW YORK; BROOKS T.
BAKER, in his individual and official capacity;
JOAN MERRY, in her individual and official
capacity; STEUBEN COUNTY SHERIFF'S
DEPARTMENT; SHERIFF JIM ALLARD, in his
individual and official capacity; SERGEANT
ANDREW HAWK, in his individual and official
capacity; DEPUTY BRENT NADJADI, in his
individual and official capacity; INVESTIGATOR
MARK SMITH, in his individual and official
capacity; CORNING POLICE DEPARTMENT;
BATH POLICE DEPARTMENT; NEW YORK
STATE ATTORNEY GENERAL'S OFFICE;
JOHN DOES 1-10, in their individual and/or official
capacities; JANE DOES 1-10, in their individual
and/or official capacities; COMMUNITY BANK,
N.A.; AMY DRUM, in her individual and
professional capacities; LUCIANO ORTEGA, in his
individual and professional capacities; MICHAEL
A. MORGAN, in his individual and professional
capacities; BONNIE FILIP, in her individual and
professional capacities; MSI and its contractors,
affiliates, and assigns; NEW YORK STATE
DEPARTMENT OF FINANCIAL SERVICES
(DFS); and JOHN/JANE DOES 1-25,[1]

        Defendants.

**DECISION AND ORDER**

6:25-CV-06197 EAW

---

[1]    The Clerk of Court is requested to amend the docket as set forth above.

*Pro se* plaintiff Joseph M. Wilson ("Plaintiff") proceeds in this action *in forma pauperis* ("IFP"). (Dkt. 16). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2)(B).[2] Plaintiff asserts claims against Steuben County; ADA Brooks T. Baker, in his official capacity as District Attorney of Steuben County ("Baker"); Joan Merry, in her official capacity as Assistant District Attorney of Steuben County ("Merry"); Steuben County Sheriff's Department; Sheriff Jim Allard, in his official capacity as Sheriff for the Steuben County Sheriff's Department ("Allard"); Sergeant Andrew Hawk, in his individual and official capacity as Sergeant for the Steuben County Sheriff's Department ("Hawk"), Deputy Brent Nadjadi, in his individual and official capacity as Deputy of the Steuben County Sheriff's Department ("Nadjadi"); Investigator Mark Smith, in his individual and official capacity as Investigator for the Steuben County Sheriff's Department ("Smith"); Corning Police Department; Bath Police Department; New York State Attorney General's Office ("OAG"); John Does, 1-10, in their individual and official capacities; Jane Does, 1-10, in their individual and official capacities; Community Bank, N.A. ("Community Bank"); Amy Drum, in her individual and professional capacities ("Drum"); Luciano Ortega, in his individual and professional capacities ("Ortega"); Michael A. Morgan, in his individual and professional capacities ("Morgan"); Bonnie

---

[2]    The Court consolidated this case with Plaintiff's case filed under case number 25-CV-6229. (Dkt. 17). Plaintiff initiated 25-CV-6229 by filing a complaint on April 28, 2025. (Dkt. 1). He amended that complaint on June 12, 2025. (Dkt. 7). Upon consolidation of 25-CV-6229 with 25-CV-6197, the amended complaint in 25-CV-6229 became a supplemental complaint to the third amended complaint in 25-CV-6197 (*See* 25-CV-6197 Dkt. 12 (mislabeled as "second amended complaint") and Dkt. 18). The Court screens (Dkt. 12) and (Dkt. 18) as the operative pleading.

Filip, in her individual and professional capacities ("Filip"); MSI and its contractors, affiliates, and assigns; and New York State Department of Financial Services ("DFS") (collectively "Defendants").

For the reasons that follow, Plaintiff's false arrest and malicious prosecution claims against Hawk, Nadjadi, and Smith and unlawful search claim against Nadjadi may proceed to service. All claims against the Corning Police Department, Bath Police Department, Steuben County Sheriff's Department, OAG, and DFS, as well as the requests for an investigation into alleged misconduct by any Defendant, the arrest of any Defendant, or that all Defendants be criminally charged, are dismissed without leave to amend. The remaining claims are dismissed with leave to amend. Plaintiff's motion for a temporary restraining order (Dkt. 21) is denied as moot.

## DISCUSSION

### I. Legal Standards

#### A. Review Under the IFP Statute

A court shall dismiss a complaint in a civil action filed IFP, if the court determines the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

#### B. Pleading Standards

In evaluating a complaint, the court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Although "a court is obliged to construe [*pro se*] pleadings

liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must contain sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See Komatsu v. Cubesmart*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Lewis v. R.L. Vallee, Inc.*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 557).  Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he [or she] has not pled."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### C.    Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  There is "no special rule for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

**D.     Leave to Amend**

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir.1999)).   But a court may deny leave to amend pleadings when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

**II.     <u>Allegations</u>**

On August 2, 2023, Steuben County Sheriff's Deputies arrested Plaintiff at his home. (Dkt. 18 at 1, 4).[3]  The arrest was made pursuant to a warrant, which Hawk, Nadjadi, and Smith had procured with false statements.  (Dkt. 12 at 18-19).  On or about August 23, 2023, Nadjadi "admitted—on the official record—that . . . Hawk knowingly falsified the original arrest document pertaining to Plaintiff's case."  (*Id.* at 4).  Nadjadi "further confirmed that both he and Sergeant Hawk engaged in acts of forgery, whereby: [o]ne officer authored and inserted materially false statements into official law enforcement documentation, and [t]he other signed and submitted said document to judicial authorities,

---

[3]     Some of Plaintiff's allegations date the events immediately prior to and following his arrest as occurring in 2024.  A court document included with his filings states that Plaintiff was arrested on August 2, 2023.  (Dkt. 12-1 at 2).

- 6 -

knowing it to be false." (*Id.*). He also testified that "Hawk personally forged the arrest document and then directed . . . Nadjadi to sign it despite . . . Nadjadi being approximately two miles away at the time, engaged in unrelated traffic detail." (*Id.* at 15). The false statements included that Plaintiff was "armed," "suicidal," and "on the run," when "Plaintiff was at home, unarmed, and asleep." (*Id.* at 15, 19). The statements led to a "coordinated SWAT-style deployment . . . acting on Hawk's directive, staged outside Plaintiff's home for a tactical raid." (*Id.* at 15). On the day prior to the tactical raid:

> Nadjadi entered Plaintiff's home without a warrant, without exigent circumstances, and without consent. He conducted a private sweep of the home and physically handled Plaintiff's legally-owned firearm -- a family heirloom bequeathed by Plaintiff's grandfather. Nadjadi admitted the weapon was unloaded, legally possessed, and that no ammunition was present. He returned it to its place after his unlawful inspection.

(*Id.* at 20).

Following Plaintiff's arrest, Sheriff Allard posted defamatory statements about Plaintiff on "official government social media." (Dkt. 18 at 4). The post was shared more than 70 times by private individuals and reached at least seven local and regional news outlets who republished the post "to tens of thousands of viewers." (Dkt. 12-2 at 2-3).

In prosecuting Plaintiff, Baker and Merry are alleged to have engaged in a variety of misconduct, including the suppression of exculpatory evidence. (Dkt. 12 at 11-12; Dkt. 18 at 2, 4). On February 1, 2024, a judge of the Steuben County Court dismissed seven counts from the 12-count indictment. (Dkt. 12-1 at 2). On June 28, 2024, the remaining counts were dismissed because the prosecution had failed to make timely disclosures as

required under New York State law, and thereby violated Plaintiff's right to a speedy trial. (*Id.* at 2-9).

While Plaintiff was "defending against these charges, Community Bank, N.A. [("Community Bank")] initiated and completed a foreclosure on Plaintiff's primary residence." (Dkt. 18 at 2). The home was sold in a foreclosure auction "on or about May 15, 2024." (*Id.*). In October 2024, Plaintiff was evicted from the home. (*Id.* at 4).

Even though he had been evicted, Plaintiff's personal property remained in the home. (*Id.*). But after notifying Drum and Filip that he intended to file this lawsuit, nearly all of his personal property was removed and placed in two storage units. (*Id.* at 4-5). After Plaintiff filed a "Reclamation and Spoliation Notice," his property was deliberately "destroyed or disposed of." (*Id.* at 5).

In the third amended complaint, Plaintiff asserts his claims in seven "counts." (Dkt. 12 at 8-13) and in the supplemental complaint, Plaintiff asserts his claims in 13 "counts." (Dkt. 18 at 5-8), which are addressed individually below.

Plaintiff seeks both monetary damages and injunctive relief. (Dkt. 12 at 27; Dkt. 18 at 8-10). Some of the injunctive relief sought—to freeze the transfer of title of his residence, cease interference with his residence, and allow Plaintiff access to the residence—essentially seeks to reverse the foreclosure judgment and sale of Plaintiff's residence, which Plaintiff alleges that he has appealed. (Dkt. 18 at 2, 8-10, 25-30, 53-56, 58, 66-82). Plaintiff's motion for a temporary restraining order seeks the same relief and requests that the Court promptly screen his claims, arguing that the delay is causing him prejudice and irreparable harm. (Dkt. 21).

## III.    Analysis

### A.    The Parties

#### 1. DFS and OAG

As official arms of the state, DFS and OAG "enjoy[] the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999).  Accordingly, claims against DFS and OAG are dismissed without prejudice[4] and without leave to amend.  *See*, *e.g.*, *Lyon v. Jones*, 168 F. Supp. 2d 1, 6 (D. Conn. 2001) (dismissing claims against the OAG "on the grounds that [such claims] are barred by Eleventh Amendment Immunity"); *Johnson v. Wolfe*, No. 19-CV-7337 (GHW), 2019 WL 5784704, at *4 (S.D.N.Y. Nov. 5, 2019) (same); *accord Pan v. City of Niagara Falls*, No. 23-7513, 2025 WL 1169057, at *1 (2d Cir. Apr. 22, 2025).

---

[4]    "Whether Eleventh Amendment immunity 'constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense' has not yet been decided by the Supreme Court or [the Second Circuit]."  *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 51 n.1 (2d Cir. 2020) (quoting *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013)); *see Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("The Eleventh Amendment, however, does not automatically destroy original jurisdiction.  Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so.").  The difference impacts whether "dismissal on sovereign immunity grounds is with or without prejudice."  *Weems v. New York*, No. 6:23-CV-6305 EAW, 2024 WL 4150397, at *3 n.2 (W.D.N.Y. Sept. 10, 2024).  In accordance with other decisions in this District, the Court dismisses Plaintiff's claims barred by the Eleventh Amendment without prejudice.  *See, e.g.*, *Petralia v. New York*, No. 6:20-CV-06393 EAW, 2021 WL 4034526, at *3 (W.D.N.Y. Sept. 3, 2021); *see also Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 445 (2d Cir. 2022) ("A dismissal for lack of jurisdiction without leave to amend is not the same thing as a dismissal with prejudice." (quoting *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019))).

### 2.  Official Capacity Claims and Municipal Defendants

Plaintiff has sued Defendants in their official capacities.  (Dkt. 12 at 1; Dkt. 18 at 1).  A lawsuit against a municipal official in official capacity "is functionally equivalent to a suit against the entity of which the officer is an agent."  *Voelkl v. Town of Greece*, No. 6:23-CV-06098 EAW, 2025 WL 690345, at *5 (W.D.N.Y. Mar. 4, 2025).  Because it appears that Merry, Baker, Hawk, Nadjadi, Smith, Allard, and John and Jane Does are Steuben County officials, the Court considers whether Plaintiff has stated a claim against Steuben County.  As Plaintiff has sued the Corning Police Department and Bath Police Department, the Court also considers whether Plaintiff has stated a claim against the City of Corning or the Town of Bath.

To state a claim against Steuben County or another municipality under § 1983, Plaintiff must show that the challenged action was performed pursuant to a municipal policy or custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Such a claim is pled with facts showing: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

> A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (citing cases).

- 10 -

To plausibly allege a *Monell* claim based on a failure to train, Plaintiff's allegations must include facts that permit an inference that the alleged failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  A municipality's deliberate indifference can be alleged by showing that it failed to take corrective measures despite having "actual or constructive notice that" a deficiency in its "training program" was causing its "employees to violate citizens' constitutional rights." *Id.*

Plaintiff asserts that Steuben County is "liable for policy, training, and supervision failures under *Monell*," but he does not plausibly allege facts in support of this assertion. (*See* Dkt. 12 at 2; Dkt. 18 at 3).  Consequently, the *Monell* claim against Steuben County is dismissed, but with leave to amend.  Plaintiff's fourth amended complaint must allege facts that show an official policy or custom of Steuben County caused a violation of his constitutional or federal rights or facts that support an inference that prior to the alleged violation, Steuben County knew or should have known that its employees needed more or better training so as to avoid the employees violating that right.

Plaintiff has not alleged any facts to suggest that a policy or custom of either Corning or Bath caused him to experience a constitutional deprivation.  As such, the *Monell* claims against Corning and Bath are similarly dismissed, but with leave to amend.

### 3. Police and Sheriff's Departments

All claims against the Corning Police Department, Bath Police Department, and Steuben County Sheriff's Department must be dismissed because "under New York law,

- 11 -

departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) (citation modified); *D'Angelo v. Foertsch*, No. 25-CV-8600 (JGLC), 2025 WL 3034203, at *1 (S.D.N.Y. Oct. 30, 2025) (sheriff's office is just an "administrative arm" and cannot be sued); *Jones v. Reinbolt*, No. 19-CV-6672-CJS, 2020 WL 9460508, at *7 (W.D.N.Y. June 1, 2020) (noting dismissal of Steuben County Jail and the Sheriff's Office because "they 'are merely administrative arms' of Steuben County" (quoting *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990))).  Because better pleading will not cure the defects, claims against the Corning Police Department, Bath Police Department, and Steuben County Sheriff's Department are dismissed without leave to amend.

### 4.  Supervisory Capacity Claims Against Allard

To the extent Plaintiff broadly alleges that Allard was "complicit in civil rights violations through failure to supervise, investigate, or intervene" (Dkt. 12 at 2), these allegations lack "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Allegations that cast Allard in a supervisory role (Dkt. 12 at 1) are likewise insufficient because Plaintiff does not show Allard's personal involvement in an alleged constitutional violation. *Tangreti*, 983 F.3d at 618.  For all of these reasons, the claims against Allard are dismissed, but with leave to amend.

### 5.  John and Jane Doe Defendants

Plaintiff's must show that John or Jane Doe had personal involvement in an alleged constitutional violation.  *Tangreti*, 983 F.3d at 618; *see Lewis v. Thoms*, No. 21-CV-6738-FPG, 2023 WL 35330, at \*6 (W.D.N.Y. Jan. 4, 2023) (plaintiff's complaint "devoid of any allegations of personal involvement by [John Doe and Jane Doe]" and the claims against them were dismissed and they were terminated as parties to the action).  To the extent Plaintiff does not show any John or Jane Doe's personal involvement in an alleged constitutional violation, *Tangreti*, 983 F.3d at 618, any claims against the John and Jane Doe Defendants are dismissed, but with leave to amend.

### B.  The Claims Raised in the Third Amended Complaint (Dkt. 12)

### 1.  Due Process (Count 1)

Plaintiff alleges that he was "deprived . . . of a fair trial, access to exculpatory evidence, and freedom from fabricated charges."  (Dkt. 12 at 9).  It is well settled that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Because Plaintiff's due process claims are predicated on the same factual basis as his other claims, they are "merely duplicative of his other claims [that] are explicitly covered by the [other] Amendment[s]," and therefore "he cannot bring an additional claim for violation of his right to substantive or procedural due process under the Fourteenth

Amendment." *Oudekerk v. Lehoisky*, 1:24-cv-0311(AMN/TWD), 2024 WL 1693850, at *6 (N.D.N.Y. Apr. 19, 2024) (citing cases), *report and recommendation adopted*, 2024 WL 3385014 (N.D.N.Y. July 12, 2024); *Strong v. Watson*, No. 1:22-CV-00552(JLS)(MJR), 2023 WL 8439445, at *11 (W.D.N.Y. Sept. 26, 2023) (dismissing "substantive and/or procedural due process claims . . . predicated on the exact same factual basis as his claims for malicious prosecution, false arrest, speedy trial violations, and denial of equal protection"), *report and recommendation adopted*, 2023 WL 7647780 (W.D.N.Y. Nov. 15, 2023), *appeal dismissed*, No. 23-7953, 2024 WL 5010594 (2d Cir. Oct. 21, 2024). The due process claims are dismissed as duplicative but with leave to amend. Plaintiff is cautioned that a due process claim based on the same conduct that gave rise to a constitutional claim will be dismissed. *See Stokes v. Wayne County*, No. 6:21-CV-06657 EAW, 2025 WL 755437, at *16 (W.D.N.Y. Mar. 10, 2025) (dismissing substantive due process claim where it was based solely on the plaintiff's Fourth Amendment claims for false arrest and excessive force), *reconsideration denied*, 2025 WL 2405565 (W.D.N.Y. Aug. 8, 2025); *Smith v. Annucci*, No. 6:18-CV-06261 EAW, 2019 WL 539935, at *7 (W.D.N.Y. Feb. 11, 2019) (dismissing substantive due process claim because it was "subsumed by the [plaintiff's] Eighth Amendment claims").

### 2. Malicious Prosecution Claim (Count 2)

Plaintiff alleges that Defendants "[k]new or should have known that the criminal charges were based on fabricated evidence and false affidavits," but initiated the charges and "[c]ontinued to prosecute Plaintiff despite overwhelming indications of innocence." (Dkt. 12 at 9). Ultimately, the charges were "formally terminated in Plaintiff's favor on

June 28, 2024[.]" (*Id.* at 10). In the supplemental complaint, Plaintiff asserts an overlapping malicious prosecution claim specifically against Allard and the Steuben County Sheriff's Department. (Dkt. 18 at 6 (Count II)).

"A claim for malicious prosecution arises under the Fourth Amendment." *Wright v. Kelly*, No. 95-CV-0688H, 1998 WL 912026, at *2 (W.D.N.Y. Oct. 16, 1998) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). A malicious prosecution claim brought under New York state law or pursuant to § 1983 is plausibly alleged with facts showing: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)). Probable cause is a "complete defense" to malicious prosecution. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). When examining a malicious prosecution claim, probable cause present at the time of arrest continues unless "the groundless nature of the charges [is] made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996).

Plaintiff plausibly alleges a malicious prosecution claim against Hawk, Nadjadi, and Smith. His allegations that each of these defendants had a role in initiating the prosecution coupled with the allegation that the County Court dismissed the indictment, in part because of the prosecution's repeated failures to comply with discovery, pleads the favorable termination requirement and suggests the absence of probable cause for his prosecution.

- 15 -

(Dkt. 12-1).  Plaintiff's malicious prosecution claims against Hawk, Nadjadi, and Smith may proceed to service.

Plaintiff also alleges, in conclusory terms, that Allard "instituted and maintained a criminal prosecution against Plaintiff without probable cause and with malice, which terminated in Plaintiff's favor[ ]" and that the "prosecution was initiated with the intent to harass, retaliate, and damage Plaintiff's reputation, violating his civil rights under state and federal law."  (Dkt. 18 at 6).  This allegation is a mere recitation of the elements of a malicious prosecution claim, which is insufficient to state a claim.  *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).  The malicious prosecution claim against Allard is therefore dismissed, but with leave to amend.

### 3.  False Arrest Claim (Count 3)

This claim alleges, *inter alia*, that Hawk, Smith and Nadjadi "fabricated evidence and submitted false records in order to unlawfully arrest" Plaintiff.  (Dkt. 12 at 10).[5]

A § 1983 claim for false arrest is anchored in the Fourth Amendment right "to be free from unreasonable seizures."  *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007).  A plausibly alleged false arrest claim brought under New York state law or pursuant to § 1983 includes factual allegations that show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Singer v. Fulton*

---

[5]    Portions of Count 3 are subsumed in the other claims.

*Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citation modified).  An arrest is "otherwise privileged" when officers have probable cause to arrest.  *Lowth*, 82 F.3d at 569.

In general, officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  An arrest made pursuant to a judicial warrant is presumed to be supported by probable cause.  *See Franks v. Delaware*, 438 U.S. 154, 164, 171 (1978).  The presumption of probable cause can be defeated by showing that the supporting warrant affidavits "on their face, fail to demonstrate probable cause," *Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)), or that the affiant "knowingly and intentionally, or with reckless disregard for the truth," procured the warrant based on a false statement or material omission that was "necessary to the finding of probable cause," *Franks*, 438 U.S. at 155-56; *accord Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022).  "[O]nce probable cause is established the police do not have to endeavor to negate it."  *Carson v. Lewis*, 35 F. Supp. 2d 250, 261 (E.D.N.Y. 1999) (citing cases).  Thus, officers executing a judicial warrant are entitled to rely on the warrant unless they were "involved in obtaining it by fraud or it was invalid on its face." *Johnson v. Dobry*, 660 F. App'x 69, 71 (2d Cir. 2016).

Construing Plaintiff's complaint liberally and interpreting it "to raise the strongest arguments that [it] suggest[s]," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), the Court concludes that Plaintiff plausibly alleges a false arrest claim against Hawk, Nadjadi,

and Smith. Although Plaintiff was arrested pursuant to a warrant, his allegations that Nadjadi "admitted—on the official record—that . . . Hawk knowingly falsified the original arrest document pertaining to Plaintiff's case," (Dkt. 12 at 4), and that Nadjadi and Smith possessed exculpatory information prior to seeking the warrant—by virtue of speaking with him on the phone and visiting his home—but intentionally withheld that information in applying for the warrant (*id.* at 18-19) are sufficient at screening to permit an inference that the arrest warrant was improper under *Franks*.

### 4.  Fair Trial and Prosecutorial Misconduct (Counts 4 and 5)

Plaintiff alleges a malicious prosecution and a fair trial claim sounding in a *Brady*[6] violation against Baker and Merry, prosecutors serving in the Office of the District Attorney of Steuben County. (Dkt. 12 at 11-12). Plaintiff also asserts a cause of action entitled "Prosecutorial Misconduct via Investigative Misconduct." (Dkt. 12 at 12, Count 5). The Court does not interpret this as a standalone claim, but rather a challenge to Baker's and Merry's entitlement to prosecutorial immunity. Specifically, Plaintiff alleges that Baker and Merry acted "outside the bounds of prosecutorial immunity [by] engag[ing] in investigative misconduct . . . ." (*Id.*).

Prosecutors performing traditional prosecutorial activities are accorded absolute immunity from § 1983 suits. *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). The

---

[6]  Under *Brady v. Maryland*, 373 U.S. 83 (1963) "state . . . prosecutors must turn over exculpatory and impeachment evidence, whether or not requested by the defense, where the evidence is material either to guilt or to punishment." *Valentin v. City of Rochester*, No. 11-CV-6238 CJS, 2018 WL 5281799, at *12 (W.D.N.Y. Oct. 24, 2018), *aff'd*, 783 F. App'x 97 (2d Cir. 2019).

immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). This "encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation," including decisions regarding when or if to prosecute a case. *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial[.]" *Kendrick v. Troche*, No. 18-CV-6932 CJS, 2019 WL 4072754, at *5 (W.D.N.Y. Aug. 29, 2019) (internal citations omitted). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004).

A prosecutor who "proceeds in the clear absence of all jurisdiction" is not immune from suit. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). But Plaintiff does not allege that his prosecution was without jurisdiction. Instead, he relies on the other exception to absolute prosecutorial immunity for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Imbler*, 424 U.S. at 430-31).

Plaintiff alleges that Baker and Merry:

Failed to disclose police disciplinary records relevant to the credibility of key law enforcement witnesses;

Withheld criminal histories and RAP sheets for civilian witnesses central to Plaintiff's defense;

Suppressed internal misconduct reports and impeachment materials known to undermine the state's case;

Knowingly filed a false certificate of trial readiness while material discovery remained unlawfully concealed[;] . . .

Directed or sanctioned the creation and use of falsified police reports and arrest affidavits;

Suppressed material exculpatory evidence prior to trial;

Participated in law enforcement interviews, document reviews, and warrant procedures without proper oversight;

Misrepresented the status of discovery and falsely certified readiness for trial;

Operated without adherence to legal ethics, training, or constitutional protections, thereby abusing investigative powers to build a false case against Plaintiff.

(Dkt. 12 at 11-12) (bullets omitted).

Plaintiff characterizes these activities as "investigatory actions," and therefore "not protected by prosecutorial immunity . . . ." (*Id.* at 12). As pled, however, these allegations encompass conduct which is "closely associated with the conduct of litigation." *Barrett*, 798 F.2d at 572; *see Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022) ("[A] prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial."); *Ogunkoya v. Monaghan*, 913 F.3d 64, 72 (2d Cir. 2019) (explaining that prosecutors have absolute

immunity for decisions and acts that "constituted an exercise of their prosecutorial discretion in preparing a case for indictment and deciding when, where, and how to prosecute."); *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) ("[T]he Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case.").

A number of Plaintiff's allegations focus on Baker's and Merry's decision to suppress exculpatory evidence but "a prosecutor enjoys absolute immunity for failure to disclose exculpatory evidence, because deciding what disclosure to make is part of a prosecutor's role as advocate, and constitutes a core prosecutorial function." *Schnitter v. City of Rochester*, 556 F. App'x 5, 7 (2d Cir. 2014) (citing *Warney*, 587 F.3d at 125). *See also Sheehan v. Colangelo*, 53 F. App'x 584, 586 (2d Cir. 2002) ("[T]he Supreme Court has elsewhere held that even the deliberate suppression of exculpatory evidence falls within the scope of a prosecutor's adversarial duties." (citing *Imbler*, 424 U.S. at 431 & n. 34).  In fact, "a prosecutor still acts within the scope of her duties even if she makes false statements during judicial proceedings, knowingly uses false testimony, . . . [or] engages in malicious prosecution[.]" *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (internal citations omitted).

Plaintiff's conclusory allegation that Baker and Merry "abus[ed] [their] investigative powers" fails to plausibly allege that they took any action outside the scope of their prosecutorial function in maliciously prosecuting Plaintiff or violating his fair trial rights.  The claims against Baker and Merry are therefore barred by prosecutorial immunity but Plaintiff may attempt to replead these claims.

### 5. Intentional Infliction of Emotional Distress ("IIED") (Count 6)

Plaintiff alleges that "Defendants . . . knowingly pursued baseless criminal charges, fabricated evidence, and publicly defamed Plaintiff—all with the intent, or substantial certainty, that their conduct would result in severe emotional and psychological harm." (Dkt. 12 at 12).

Under New York law, a claim for IIED consists of facts that allege: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Okudinani v. Rose*, 779 F. App'x 768, 772 (2d Cir. 2019) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)). "Only conduct 'utterly intolerable in a civilized community' can satisfy this demanding standard," *id.*, such as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious[.]" *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 530 (S.D.N.Y. 2013).

"IIED . . . remains a highly disfavored [tort] under New York law" that "is to be invoked only as a last resort[.]" *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (internal quotation marks and citations omitted). Consequently, it "provide[s] relief in those circumstances where traditional theories of recovery do not[.]" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citation omitted).

Plaintiff acknowledges that he is asserting this claim as "an alternative claim . . . based on the same misconduct underlying his federal claim." (Dkt. 12 at 12). Although "[t]he applicable federal rules of procedure authorize alternative claims in a

pleading," IIED "may not be used as a substitute for an available traditional tort theory." *Powell v. City of Jamestown*, No. 1:21-cv-721, 2022 WL 1913581, at *21 (W.D.N.Y. June 3, 2022) (quoting *Taylor v. City of Rochester*, 458 F. Supp. 3d 133, 145 (W.D.N.Y. 2020)); *see also McCarthy v. Roosevelt Union Free Sch. Dist.*, No. 15-CV-01468(JFB)(SIL), 2017 WL 4155334, at *4 n.6 (E.D.N.Y. Sept. 19, 2017) (in which the IIED claim "'fail[ed] as a matter of law because it overlap[ed] with traditional tort theories of liability,' namely, [the plaintiff's] false imprisonment claim."). Because the alleged conduct may be actionable under other state law tort theories, the IIED claim, which is not a claim of "last resort," is dismissed with leave to amend.

### 6. Defamation Claim (Count 7)

Plaintiff alleges that following his arrest, Allard posted defamatory statements about him on "official government social media." (Dkt. 18 at 4). Plaintiff contends the statements caused "severe reputational damage." (*Id.* at 1). More broadly, Plaintiff alleges "Defendants . . . publicly defamed [him] by disseminating knowingly false criminal allegations." (Dkt. 12 at 13).

The Second Circuit has held that defamation, typically a state-law claim, may under certain circumstances rise to a constitutional dimension. *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010) (holding wrongfully classifying an inmate as a sex offender could be stigmatizing and may implicate a constitutional liberty interest). To state such a due process violation, which is referred to as a "stigma-plus" claim, a plaintiff must plausibly allege "(1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' plus (2)

'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Balentine v. Tremblay*, 554 F. App'x 58, 60 (2d Cir. 2014) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)).

As to Allard, Plaintiff's allegations suggest harm flowing from the social media posts, but he does not plausibly allege the unidentified statements were false at the time they were made—principally because he has not provided the Court with the specific statement he alleges is defamatory. This claim is therefore dismissed, but with leave to amend.

As to the remaining Defendants, Plaintiff has similarly not plausibly alleged a false statement or explained how any Defendant was personally involved in the constitutional violation here. These claims are similarly dismissed, but with leave to amend.

### 7. Illegal Search and Seizure Claim

Liberally interpreted, the third amended complaint asserts an unlawful search and seizure claim against Nadjadi. (Dkt. 12 at 20-21; Dkt. 12-2 at 5). On August 2, 2024, Nadjadi is alleged to have entered Plaintiff's home without a warrant, without exigent circumstances, and without consent. (Dkt. 12 at 20).[7]

---

[7]    The allegations regarding Smith, including that Plaintiff "voluntarily and politely invited Smith to check the premises, with no resistance or obstruction" (Dkt. 12 at 18) do not suggest an unlawful search by Smith. Buried in an attachment to the third amended complaint is a statement that both Nadjadi and Hawk entered his home. (Dkt. 12-5 at 2). In 189 pages of documents, this is the only suggestion that Hawk unlawfully entered Plaintiff's home. But that stray sentence does not plausibly allege an unlawful search claim against Hawk. Plaintiff may amend such claim if he so chooses.

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The general rule is that all warrantless searches, even when based on probable cause, are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). To determine whether a search has been unreasonable, a court must "balanc[e] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *O'Connor v. Ortega*, 480 U.S. 709, 719 (1987) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). "[A]n individual may consent to a search, thereby rendering it reasonable. To ascertain whether consent is valid, courts examine the 'totality of all the circumstances' to determine whether the consent was 'a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority.'" *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995) (citations omitted).

Plaintiff plausibly alleges an unlawful search claim against Nadjadi that may proceed to service.

## C.    The Claims Raised in the Supplemental Complaint (Dkt. 18)

### 1. Lack of State Action

Plaintiff asserts several constitutional and federal statutory claims against all Defendants arising from the foreclosure, including an illegal seizure, due process, equal protection, abuse of process, retaliation, and ADA claims. (Dkt. 18 at 6-7).

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"  *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991).  As such, "[§] 1983 addresses only those injuries caused by state actors or those acting under color of state law."  *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).

> Consequently, under § 1983:
>
> the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations in original) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Plaintiff alleges that Community Bank is a financial institution authorized to do business in the State of New York.  (Dkt. 18 at 2).  Community Bank initiated a foreclosure action, forced the sale of Plaintiff's home, purchased the home at auction, and pursued eviction proceedings to remove Plaintiff from the home.  (*Id.* at 4-5).  Sometime after the eviction, Community Bank contracted MSI and its contractors, affiliates, and assigns (collectively "MSI") to remove Plaintiff's personal property from the home.  (*Id.* at 4-5, 100-101).  Plaintiff alleges that Drum, Ortega, and Morgan work in various capacities for

Community Bank. (*Id.* at 3). MSI is sued in its corporate and agency capacities for its involvement in the removal, storage, and alleged destruction of Plaintiff's personal property. (*Id.*). Plaintiff sues all of these Defendants for actions they took in relation to the foreclosure of his home. (*Id.*).

Neither the pleadings, nor the attachments thereto support an inference that these Defendants are state actors. While Plaintiff makes a conclusory allegation that all of the Defendants "conspired" to violate Plaintiff's constitutional rights, (*id.* at 8), he provides no factual allegations to support an inference that Community Bank, Drum, Ortega, Morgan, or MSI are private individuals acting under color of state law. *See, e.g.*, *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *Bromfield v. Lend-Mor Mortg. Bankers Corp.*, No. 3:15-cv-1103 (MPS), 2016 WL 632443, at *5 n.3 (D. Conn. Feb. 17, 2016) ("Banks suing private parties in foreclosure proceedings are not state actors.").

Accordingly, the federal claims against Community Bank, Drum, Ortega, Morgan, and MSI are dismissed, with leave to amend to allege facts showing that these Defendants acted in concert with state officials sufficiently to deem them state actors.

### 2. Retaliation (Count III)[8]

To make out a claim for retaliation under the First Amendment, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took

---

[8]     Count I purports to bring a standalone claim for "[v]iolation of Civil Rights (42 U.S.C. § 1983)" (Dkt. 18 at 5), but "there is no such thing as a standalone § 1983 claim

- 27 -

adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

Plaintiff alleges that Defendants retaliated against him by "destroying [his] property," "concealing evidence," and "restricting access to [his] belongings" for "filing federal litigation." (Dkt. 18 at 6). The only specific factual allegation related to this claim appears to be that shortly after Plaintiff notified Drum and Filip of his lawsuit, nearly all of his personal property was removed and placed in two storage units. (*Id.* at 4-5).

More is needed to plausibly allege a causal connection between this lawsuit and the adverse actions identified: destruction of personal property, concealment of evidence, and restricted access to his belongings. While Plaintiff alleges Filip, presumably a state actor, received notice of the suit, there are no allegations of her personal involvement in the subsequent treatment of Plaintiff's personal property.[9] This claim is therefore dismissed with leave to replead.

---

untethered to a substantive right." *Boykin v. Westchester Cnty. Jail*, No. 22-CV-10513 (CS), 2024 WL 4252040, at *7 (S.D.N.Y. Sept. 20, 2024). Count II is a malicious prosecution claim against Allard and the Steuben County Sheriff's Department which overlaps with the malicious prosecution claim of the Third Amended Complaint (Dkt. 12 at 9 (Count 2)) and addressed above.

[9]    Assuming Filip is a state actor, the Eleventh Amendment bars any claims for monetary damages against her in her official capacity, and the Court dismisses those claims without prejudice and without leave to amend. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) (explaining that just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" since they assume the identity of the government that employs them); *see also Harty*, 28 F.4th at 445 ("A dismissal for

### 3.  Americans with Disabilities Act ("ADA") (Count IV)

Plaintiff alleges that he is an is an individual who suffers from a disability, and that Defendants failed to "provide accommodations and ignored Plaintiff's condition throughout the arrest, prosecution, foreclosure, and property seizure."  (Dkt. 18 at 6).

Title II of the ADA "proscribes discrimination against the disabled in access to public services."  *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (quoting *Powell v. Nat'l Bd. Of Med. Exam'rs*, 364 F.3d 79, 84-85 (2d Cir.), *corrected*, 511 F.3d 238 (2d Cir. 2004)).  The statute provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

A violation of the ADA sufficient to survive screening includes plausible allegations showing: (1) the plaintiff is a qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of his or her disability.  *See Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

---

lack of jurisdiction without leave to amend is not the same thing as a dismissal with prejudice." (quoting *MAO-MSO Recovery II, LLC*, 935 F.3d at 581)).

An ADA plaintiff is a "qualified individual with a disability," when the pleading shows that he or she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted). Police fail to accommodate an arrestee's disability when they cause the disabled arrestee "to suffer greater injury or indignity in that process than other arrestees." *Williams v. City of New York*, 121 F. Supp. 3d 354, 369 (S.D.N.Y. 2015); *accord Durr v. Slator*, 558 F. Supp. 3d 1, 28 (N.D.N.Y. 2021).

Plaintiff alleges he was a qualified individual with a disability, having been diagnosed with anxiety in 2017, when he was arrested, prosecuted, and evicted. (Dkt. 18 at 2). This claim fails because Plaintiff has not alleged that any Defendant is subject to the ADA; he has not alleged facts that describe how his anxiety substantially limits one or more major life activities; and he had not alleged facts showing how law enforcement caused him to suffer greater injury or indignity than other arrestees. This claim is dismissed, but with leave to amend.

### 4. Abuse of Process (Count V)

Plaintiff alleges that Defendants "willfully used legal processes—including criminal prosecution, foreclosure proceedings, and eviction enforcement—not for their proper purposes, but to harass, intimidate, and inflict harm on Plaintiff." (Dkt. 18 at 6). "When a plaintiff asserts an abuse-of-process claim under Section 1983, '[the Second Circuit has]

turn[ed] to state law to find the elements'—in this case, New York State law." *Mangino v. Incorporated Village of Patchogue*, 808 F.3d 951, 958 n.5 (2d Cir. 2015) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)); *see Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003) (citing New York State decisional law in analyzing a § 1983 claim for abuse of process).

Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (quoting *Cook*, 41 F.3d at 80).

The purpose must be "aimed to achieve a collateral purpose beyond or in addition to" the use of process. *Savino*, 331 F.3d at 77 (emphasis added). "To commit the tort, a party must improperly use that process after it is issued for a result and in a manner neither intended nor sanctioned by the law." *First Merch. Bank OSH, Ltd. v. Vill. Roadshow Pictures*, No. 01 CIV. 8370(GEL), 2002 WL 1423063, at *8 (S.D.N.Y. June 28, 2002). "In other words, [a]buse of process resembles a form of extortion, by which the defendant invokes legal process to coerce the plaintiff into doing something other than what the process necessitates." *Santiago v. City of Rome*, No. 6:24-cv-00704 (BKS/MJK), 2025 WL 553347, at *7 (N.D.N.Y. Feb. 19, 2025) (alteration in original) (quoting *Simmons v. Ferrigno*, No. 6:17-CV-06176 MAT, 2019 WL 12361880, at *6 (W.D.N.Y. Aug. 5, 2019)).

Plaintiff's conclusory allegations that all Defendants used legal processes improperly to "harass, intimidate, and inflict harm on" (Dkt. 18 at 6) are insufficient to

plausibly allege that any Defendant had a collateral purpose in instituting Plaintiff's prosecution, foreclosure, or eviction. *Folk*, 243 F. Supp. 3d at 375 (a collateral purpose was not alleged where the plaintiff's allegations "directly relate[d] to the Individual Defendants' roles as police officers and the criminal prosecution,"); *Pawaroo v. Countrywide Bank*, No. 09-CV-2924 (ARR) (SMG), 2010 WL 1048822, at *5 (E.D.N.Y. Mar. 18, 2010) (dismissing abuse of process claim where the Plaintiff "alleged no facts that would indicate an abuse of the foreclosure procedure for ends other than what foreclosure was intended for-to collect on a mortgage default."); *Secard v. Wells Fargo Bank, N.A.*, No. CV 15-499 (JS) (ARL), 2015 WL 6442563, at *5 (E.D.N.Y. Sept. 9, 2015) ("Plaintiff has failed to plausibly allege that Wells Fargo initiated the foreclosure action for any reason other than to recover the amount due and owing to Wells Fargo under Plaintiff's loan."), *report and recommendation adopted*, 2015 WL 6442346 (E.D.N.Y. Oct. 23, 2015); *Hanspal v. J.P. Morgan Chase Bank*, N.A., No. 18-CV-0295 (FB) (RML), 2019 WL 4696315, at *3 (E.D.N.Y. Sept. 26, 2019) ("Eviction of a possessor is the intended objective of an eviction proceeding, not a collateral one.").

Plaintiff has also failed to specify the personal involvement of any Defendant in connection with the abuse of process claim. Accordingly, this claim is dismissed, but with leave to amend.

### 5. Unreasonable Seizure Claim (Count VI)

Plaintiff alleges that Community Bank, MSI, and the Steuben County Sheriff's Department "entered [his] residence and storage areas without legal authority, court order, consent, or exigent circumstances." (Dkt. 18 at 6-7). Because this claim is alleged against

- 32 -

non-state actors and the Steuben County Sheriff's Department, a dismissed defendant, it is dismissed with leave to amend.

### 6. Equal Protection (Count VII)

Plaintiff alleges that he was "deprived . . . of his property and liberty" as a result of "selective enforcement" and "based on personal animus, bias, or disregard for his legal rights under the Fourteenth Amendment." (Dkt. 18 at 7). Plaintiff's allegations do not evince an intent to discriminate against him based on his membership in a protected class. Accordingly, an equal protection claim is available "pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one.'" *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013).

A class-of-one claim requires a plaintiff to plausibly allege that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This requires "an extremely high degree of similarity" between comparators. *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006); *accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010). In other words, the similarly-situated comparator must be "*prima facie* identical" to the plaintiff such that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy" and "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Hu v. City of*

*New York*, 927 F.3d 81, 92 (2d Cir. 2019) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

To plead a selective enforcement claim, a plaintiff must plausibly allege that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at 91 (quoting *Zahra*, 48 F.3d at 683). A "'reasonably close resemblance' between a plaintiff's and comparator's circumstances" is required. *Id.* at 93.

Plaintiff's allegations do not provide facts to support an equal protection claim under either theory. That is, Plaintiff has not shown he was treated differently than those similarly situated or that such treatment was motivated by a discriminatory reason. Nor has Plaintiff identified any Defendant's personal involvement in the alleged equal protection violation. This claim is dismissed, but with leave to amend.

### 7. Procedural Due Process (Count VII)

Plaintiff alleges that he was denied his property "without adequate notice or opportunity to be heard." (Dkt. 18 at 7). Liberally interpreted, Plaintiff appears to be raising a due process claim arising from the alleged failure by Community Bank to comply with the 90-day pre-foreclosure notice requirements required by New York Real Property Actions and Proceedings Law ("RPAPL") § 1304. (*Id.* at 8 (Count XII)). To the extent that this claim only appears to involve Community Bank, a non-state defendant, it is dismissed with leave to amend.

- 34 -

### 8. Spoilation of Evidence (Count X)

Plaintiff alleges that Defendants have "knowingly destroyed or concealed critical physical evidence . . . prejudicing [his] ability to prosecute his claims." (Dkt. 18 at 7). The Court construes this as a First Amendment right of access to courts claim.

"In a section 1983 claim alleging a cover-up by government agents, the constitutional right at issue is the First Amendment right of access to courts: the theory is that the cover-up has made it impossible for the plaintiff to litigate an underlying claim, because material evidence was destroyed, for instance, or because the statute of limitations expired before the plaintiff discovered the cover-up." *Taranto v. Putnam Cnty.*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *13 (S.D.N.Y. Sept. 28, 2023) (quoting *Tavares v. N.Y.C. Health & Hosps. Corp.*, No. 13-CV-3148, 2015 WL 158863, at *7 (S.D.N.Y. Jan. 13, 2015)).[10] In short, "such claims are available only if a judicial remedy was 'completely foreclosed' by the . . . nondisclosure." *Marquez*, 702 F.3d at 128 (citation omitted).

The supplemental complaint fails to plausibly allege an actual injury from the spoilation of evidence. Plaintiff is pursuing his claims in this action and in state court, and it is speculative to gauge the impact that the absence of any evidence will have on Plaintiff's

---

[10]    These have been referred to as backward-looking access claims, but the viability of such claims is unsettled. *See Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012) ("The viability of backward-looking right-of-access claims is far from clear in this Circuit . . . ."); *Reynolds v. City of New York*, No. 21-CV-6111 (AMD) (TAM), 2024 WL 3718630, at *7 (E.D.N.Y. Aug. 8, 2024) ("The Second Circuit has not adopted a test for evaluating backward-looking claims. . . .").

claims. *See Taranto,* 2023 WL 6318280, at \*13 ("Plaintiffs' claims are clearly not foreclosed as they are bringing them in this very Action and have not argued that any claims have been foreclosed—accordingly the claim is dismissed."); *see also Vallade v. Fischer,* No. 12-CV-00231(A)(M), 2014 WL 5481881, at \*16 (W.D.N.Y. Oct. 29, 2014) (concluding that the defendants' destruction of videotape evidence, the plaintiff's "best and definitive evidence" of the plaintiff's claim,  did not satisfy the actual injury requirement because the plaintiff's suit arising from the incident depicted on the video was pending).

This claim is also broadly alleged against all Defendants without identifying the personal involvement of any particular defendant in the destruction of evidence necessary to prosecute his claims.  This claim is therefore dismissed but with leave to amend to address these deficiencies.

### 9.  Conspiracy: 42 U.S.C. § 1985(2), (3) (Count XIII).

"Section 1985(2) bars conspiracies to obstruct justice in federal (first clause) and state (second clause) judicial proceedings." *Langton v. Town of Chester,* No. 14 Civ. 9474 (NSR) (LMS), 2017 WL 6988708, at \*6 (S.D.N.Y. Sept. 26, 2017) (citing *Kush v. Rutledge,* 460 U.S. 719, 724-25 (1983)), *aff'd sub nom.*, *Langton v. Town of Chester Libr. Bd.*, 2020 WL 2850898 (S.D.N.Y. June 1, 2020).  "There are three elements needed to sustain a cause of action under Section 1985(2); a plaintiff must allege '(1) a conspiracy between two or more persons, (2) to deter a witness "by force, intimidation, or threat" from attending any court of the United States or testifying freely therein, which (3) causes injury to the claimant.'" *Id.* (quoting *Grant v. Abbott House*, No. 14-CV-8703 (NSR), 2016 WL 796864, at \*6 (S.D.N.Y. Feb. 22, 2016)).  For claims pleaded under the second clause of

- 36 -

Section 1985(2), the plaintiff must also show "that the co-conspirators' actions were motivated by discriminatory 'racial, ethnic, or class-based animus.'" *Id.* (quoting *Zemsky v. City of New York*, 821 F. 2d 148, 151 (2d Cir. 1987)).

Conspiracy claims under Section 1985(3) similarly "require the plaintiff to show that the conspiracy was motivated by racial or otherwise class-based animus." *Maldonado v. Maldonado*, No. 1:19-cv-7047 (ENV), 2020 WL 999871, at *2 (E.D.N.Y. Mar. 2, 2020) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 834-35 (1983); *Zemsky*, 821 F.2d at 151).

Any conspiracy claim, whether under Section 1985(2) or (3), "must provide some factual basis supporting a meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Thus, a plaintiff "must make an effort to provide some details of time and place and the alleged effects of the conspiracy including facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018) (citation modified). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Plaintiff has not alleged facts to suggest that any Defendants entered into an unlawful agreement or had a meeting of the minds with the goal of depriving him of his

rights or to obstruct justice in state or federal court. Nor has Plaintiff alleged that the Defendants conspired between or amongst each other against him on the basis of his race or other class-based animus. The conspiracy claims are therefore dismissed but with leave to amend.

### 10. State Law Claims (Counts VIII, IX, XI, and XII)

Plaintiff has alleged a number of state law claims in connection with the foreclosure of his home and his eviction from the property, including conversion and constructive fraud (Count VIII), IIED for destruction of "irreplaceable belongs, family heirlooms, and children's memorabilia" (Count IX), negligent bailment and custody of property (Count XI), and violation of RPAPL § 1304 (Count XII). (Dkt. 18 at 7-8).

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Subsection (a) of § 1367 provides:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004).

"In determining whether two disputes arise from a 'common nucleus of operative fact,'" courts look to "whether the facts underlying the federal and state claims

substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Hamilton Rsrv. Bank Ltd. v. Dem. Socialist Republic of Sri Lanka*, 134 F.4th 73, 80 (2d Cir. 2025) (citation modified). "This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Id.* at 80-81 (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006)).

Currently, the malicious prosecution, false arrest, and illegal search claims against Nadjadi, Hawk, and Smith are the only surviving claims over which the Court has original jurisdiction. (Dkt 18 at 2 (asserting federal question jurisdiction under 28 U.S.C. § 1331)). None of the state law claims raised in the supplemental complaint share a common nucleus of facts with the surviving claims. Because section 1367(a) is not satisfied, the Court declines at this time to exercise supplemental jurisdiction over the state law claims in the supplemental complaint. Plaintiff's state law claim for conversion and constructive fraud (Count VIII), IIED (Count IX), negligent bailment and custody of property (Count XI), and violation of RPAPL § 1304 (Count XII) are therefore dismissed without prejudice to replead. *See Rutherford v. Correct Care Sols., LLC*, No. 18 CV 12049 (VB), 2020 WL 550701, at *11 (S.D.N.Y. Feb. 4, 2020) ("[P]laintiff's retaliation claim against Capt. Thomalen is the only claim 'in this action' 28 U.S.C. § 1367(a), surviving dismissal. Accordingly, the Court may not exercise supplemental jurisdiction over any potential state-law claims that do not arise from a common nucleus of operative fact as the First Amendment retaliation claim against Capt. Thomalen.").

Because these claims and others appear to overlap with Plaintiff's pending state court action and may be barred in whole or in part by principals of abstention, if such state law claims are repleaded, the amended complaint shall identify the status of any state court proceedings related to the foreclosure, eviction, or personal property removed from the residence. *See Santana v. Fed. Nat'l Mortg. Ass'n*, No. 1:15-cv-1424 (TJM/DJS), 2016 WL 676443, at *2 (N.D.N.Y. Feb. 18, 2016) (collecting cases) ("[C]ourts in this circuit have concluded that abstention is appropriate when a federal action seeks to enjoin an ongoing state foreclosure proceeding."); *Clark v. Bloomberg*, No. 10-CV-1263 (JG), 2010 WL 1438803, at *2 (E.D.N.Y. Apr. 12, 2010) ("Abstention doctrine thus bars [Plaintiff's] claims to enjoin the foreclosure action and the eviction proceedings.").

### 11. Requests for Investigations and the Filing of Criminal Charges

To the extent that Plaintiff seeks an investigation into alleged misconduct by any Defendant (*see* Dkt. 18 at 64, 79, 93; Dkt. 12 at 17-18, 20-23, 25, 28),"there is no constitutional right to an investigation by government officials." *Alan v. U.S. Dep't of Just.*, 716 F. Supp. 3d 67, 70 (W.D.N.Y. 2024) (citation modified) (collecting cases). Additionally, "the law is well settled that no private citizen has a constitutional right to bring a criminal complaint against another individual." *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 316 (W.D.N.Y. 2004); *see Bryant v. Virgin Islands*, No. 1:12-cv-87-jmg, 2012 WL 1910092, at *2 (D. Vt. May 25, 2012) ("This Court has no jurisdiction to order criminal prosecutions. Criminal prosecutions are within the exclusive province of the public prosecutor, who has complete discretion over the decision to initiate, continue or cease prosecution." (citation modified)). Consequently, any claims requesting an investigation

into alleged misconduct by any Defendant or seeking the arrest of any Defendant or that the Defendants be criminally charged are dismissed without leave to amend.

## CONCLUSION

The false arrest and malicious prosecution claims against Hawk, Nadjadi, and Smith and the unlawful search claim against Nadjadi may proceed to service. All claims against the Corning Police Department, Bath Police Department, Steuben County Sheriff's Department, OAG, and DFS, as well as the requests for an investigation into alleged misconduct by any Defendant; the arrest of any Defendant; or that the Defendants be criminally charged, are dismissed without leave to amend. The remaining claims are dismissed with leave to amend.

The fourth amended complaint is due **no later than 45 days from the entry of this Decision and Order**. It must be captioned as the "Fourth Amended Complaint" and must be drafted in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. The fourth amended complaint will supersede and replace all previous complaints in 25-CV-6197 and 25-CV-6229. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, Plaintiff's fourth amended complaint must include all of the necessary allegations so that the fourth amended complaint stands alone as the sole complaint in this action. This means that if Plaintiff chooses to file a fourth amended complaint, he must replead the claims proceeding to service and any claims dismissed with leave to amend that he chooses to amend.

The fourth amended complaint will be subject to review by the Court pursuant to 28 U.S.C. § 1915(e)(2)(B) before any claim will proceed to service.

The Court may dismiss any claims in a fourth amended complaint that fail to cure the deficiencies identified above. *See Williams v. Baxter*, 22-CV-6117-EAW, 2023 WL 5584345, at *3 (W.D.N.Y. Aug. 29, 2023) (after apprising the plaintiff of the deficiencies in his complaint and putting him on "the plainest notice of what was required," the court denied a second opportunity to amend (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978))).

Plaintiff is further advised that he has been granted leave to amend only those claims addressed above. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (collecting cases).

Plaintiff may attach exhibits to his fourth amended complaint, but the Court will not independently examine exhibits that Plaintiff does not specifically reference in the complaint. *See Belardo v. Annucci*, No. 9:22-CV-0032 (DNH/ATB), 2022 WL 22889131, at *3 (N.D.N.Y. May 10, 2022) ("It is not the Court's responsibility to scour those exhibits and attempt to manufacture a cause of action from the information contained in those materials.") (citing *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (noting that the court "need not manufacture claims of error for an appellant proceeding *pro se*"; *Cleveland v. Breslin*, No. 97-CV-0486 (TJM)(GJD), 1997 WL 275101, at *2 (N.D.N.Y. May 16, 1997) (declining to examine exhibits not specifically referenced)).

## **ORDER**

IT IS HEREBY ORDERED that the Clerk of Court shall update the caption as set forth above; and it is further

- 42 -

ORDERED that the false arrest and malicious prosecution claims against Andrew Hawk, Brent Nadjadi, and Mark Smith and the unlawful search claim against Brent Nadjadi may proceed to service; and it is further

ORDERED that all claims against the New York State Department of Financial Services, Corning Police Department, Bath Police Department, Steuben County Sheriff's Department, and New York State Office of the Attorney General are dismissed without leave to amend. The Clerk of Court shall terminate these Defendants; and it is further

ORDERED that the remaining claims are dismissed with leave to amend; and it is further

ORDERED that Plaintiff may amend as set forth above; his fourth amended complaint is due **no later than 45 days from the entry of this Decision and Order**; and it is further

ORDERED that the Clerk of Court shall send to Plaintiff with this Decision and Order a copy of the operative pleadings (Dkt. 12; Dkt. 18), a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further[11]

ORDERED that if Plaintiff does not file a fourth amended complaint by the deadline set by the Court, the Clerk of Court shall cause the United States Marshals Service to serve the summons, operative pleadings (Dkt. 12; Dkt. 18) and this Decision and Order upon

---

[11]     If Plaintiff files an amended complaint, service will be deferred until such time as the Court has screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

Andrew Hawk, Brent Nadjadi, and Mark Smith, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g), Andrew Hawk, Brent Nadjadi, and Mark Smith shall answer or otherwise respond to the allegations made against them in the operative pleading; and it is further

ORDERED that Plaintiff's motion for a temporary restraining order (Dkt. 21) is denied as moot; and it is further

ORDERED that the Clerk of Court shall forward a copy of this order to Steuben County Attorney Timothy J. Rosell at 3 E. Pulteney Square, Bath, NY 14810; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Plaintiff must immediately notify the Court in writing if his address changes. Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court


Dated:    August 10, 2026
          Rochester, New York